## Nissley *v.* Moeslein, Appellant.

*Deed—Plan—Release—Boundaries—Marks on the ground.*

. Where the owner of a mortgaged farm lays out a plan of lots using a different scale for the interior streets and lots than the scale used for the exterior lines of the farm, and the mortgagee releases a portion of the land embraced in the plan using in the release the lines on the recorded plan, and the marks on the ground are indefinite and obscure and give no indication of the streets and lots, the lines and measurements in the plan, and used in the release, must prevail as against the terminus of one of the streets indicated at a particular point on the plan.

In such a case the plain general intent of the recorded plan to exhibit a symmetrical town plot with the dimensions of the lots and widths of the streets as there laid down, must prevail against particular intent to place the terminus of a particular street at a point indicated on the plan.

Argued March 11, 1903.    Appeal, No. 27, March T., 1903, by defendants, from judgment of C. P. Dauphin Co., Jan. T., 1902, No. 421, on case tried by the court without a jury in suit of Harmon L. Nissley v. Edward Moeslein and John Vallerchamp.    Before BEAVER, ORLADY, SMITH, PORTER and MORRISON, JJ.    Affirmed.

Ejectment for land in Susquehanna township.

The case was tried by WEISS, J., by agreement of the parties without a jury.

The facts appear by the opinion of the Superior Court.

*Error assigned* was in entering judgment for plaintiff on case tried by court without a jury.

*M. W. Jacobs* and *Benjamin N. Nead,* for appellants.—The re-

lease is to be most strongly construed against the releasor : Am. Surety Co. v. Pauly, 170 U. S. 133 (18 Sup. Ct. Rep. 552) ; Wallace v. Ins. Co., 51 Fed. Repr. 742, 744 ; Wilson v. Cooper, 95 Fed. Repr. 625, 628 ; Western Ins. Co. v. Cropper, 32 Pa. 351, 355 ; Buckley v. Garrett, 47 Pa. 204, 209 ; Smith v. Ins. Co., 103 Pa. 177 ; Noonan v. Bradley, 9 Wall. 394.

It is well settled that, of all elements of description, quantity is the least reliable ; after quantity, courses and distances, and between courses and distances the latter are less reliable than the former: Ayers v. Watson, 113 U. S. 594, 608 (5 Sup. Ct. Rep. 641) ; Green v. Schrack, 16 Pa. Superior Ct. 26 ; Blasdell v. Bissell, 6 Pa. 258 ; Cox v. Couch, 8 Pa. 147 ; Petts v. Gaw, 15 Pa. 218 ; Lodge v. Barnett, 46 Pa. 477 ; Caldwell v. Holler, 40 Pa. 160 ; Quinn v. Heart, 43 Pa. 337 ; Ake v. Mason, 101 Pa. 17 ; Medara v. Du Bois, 187 Pa. 431: Airey v. Kunle, 7 Pa. Superior Ct. 112: Salmon Creek Lumber, etc., Co. v. Dusenbury, 110 Pa. 446.

It is admissible, in locating a line, where a difficulty exists in identifiying monuments, natural or artificial, to run the line in a reverse way, if thereby doubts may be the better solved. " The footsteps of the original surveyor may be traced backwards as well as forward : " Ayers v. Watson, 137 U. S. 584, 500 (11 Sup. Ct. Rep. 201) ; Coal Co. v. Doran, 142 U. S. 417 (12 Sup. Ct. Rep. 230.)

So any ascertained monument may be adopted as a starting point, where difficulty exists in ascertaining the lines of a survey as actually run: Ayers v. Watson, 137 U. S. 584 (11 Sup. Ct. Rep. 201) ; Belding v. Hebard, 103 Fed. Repr. 532.

*Frederick M. Ott,* for appellee.—The well-known rule that monuments or calls in the description in a deed will usually control courses and distances is not a cast-iron or inflexible rule of construction ; and when the deed bears internal evidence that the recognition of the ordinarily inferior element of description will best carry out the intention of the parties, the first-named rule will give way ; and the courses and distances will govern or control the monuments : Davis v. Rainsford, 17 Mass. 207 ; Higinbotham v. Stoddard, 72 N. Y. 94 ; Newhall v. Ireson, 62 Mass. 595 ; Brolaskey v. McClain, 61 Pa. 146 ; McClintock v. Rogers, 11 Ill. 279.

A reference to a plan will control metes and bounds which are at variance with the courses and distances of the plan : Ide v. Pearce, 75 Mass. 350 ; Lincoln v. Wilder, 29 Maine, 169 ; Whitehead v. Ragan, 106 Mo. 231 (17 S. W. Repr. 307) ; Jamison v. Fopiano, 48 Mo. 194 ; Zeibold v. Foster, 118 Mo. 349 ; Hubbard v. Dusy, 80 Cal. 281 (22 Pac. Repr. 214).

Every survey must be commenced at the beginning corner, unless to do so would destroy the grant : Owings v. Freeman, 48 Minn. 483 (51 N. W. Repr. 476).

The argument that a reverse measurement from the hickory tree, around the boundary of the farm, should have been resorted to, in order to fix the proper location of Queen street, is fallacious. A measurement in that direction could not stop at the northern line of Queen street, as located upon the plan ; and if the line were to be carried on across the farm, the result would, of course, be that the hickory tree, made the starting point of the description of the release, would not be found where the division line would then end ; and the entire property of the appellee would be widened about 115 feet, along its entire eastern boundary, thus curtailing the quantity of land held by appellants in the eastern end of the farm.

OPINION BY SMITH, J., May 22, 1993 :

In 1884, Mrs. Simon, the owner of a tract of land containing nearly 170 acres, mortgaged it. In 1885, she projected a scheme of town lots and streets, to be laid out on part of the tract, and on January 8, 1892, a draft or plan of these was recorded. On September 17, 1892, the mortgagee released about fifty acres of the land embraced in this plan. On March 19, 1896, upon a foreclosure of the mortgage, the tract, excepting the portion released, described by a reference to the recorded release, and another portion, not material here, was purchased by the plaintiff. On February 17, 1897, a son of Mrs. Simon, who had acquired title to the land released, conveyed part of it to the defendants, including, as they contend, the land in controversy, consisting of a little more than three acres. The question for determination is whether this portion is embraced in the release, the plaintiff contending that it is not.

The description of the land released follows the lines on the

recorded plan. As shown on this, the lands adjoining the Simon tract are those of L. N. Ott on the northwest and Mary Etter on the north, east and south. On the plan, the streets running north and south are designated by numbers, and those running east and west by names. So far as material here, the former, beginning with the most westerly, are Twelfth, Thirteenth and Fourteenth ; the latter, beginning with the most northerly are Oak, Queen, King, Bellevue and Mary. In the description, the point of departure is a hickory tree on the Simon and Etter line, at or near the northeast corner of Fourteenth and Mary streets. The interior lines, separating the portion released from the residue of the town plot, are laid on the streets as plotted, running northerly on Fourteenth and Thirteenth, and westerly on King and Queen, the latter terminating at the Simon and Ott line. The exterior lines are those between the Simon land and the Ott and Etter lands, beginning at the junction of Queen street and the Ott line, and terminating at the hickory tree. The description given in the release is as follows, the distances not given being indicated on the draft by the dimensions of the lots and the width of the streets :

" Beginning at a hickory tree, being at or near the northeast corner of Fourteenth and Mary streets, as laid down on a plot or plan of said property, recorded in said county, in plan book ' B,' page 9 ; thence northwardly along the eastern side of Fourteenth street to the middle of King street as laid down on said plan; thence westwardly by the middle of King street to the middle of Thirteenth street; thence northwardly by the middle line of Thirteenth street to the northern line of Queen street as laid down on said plan, and thence westwardly by the said line of Queen street about 950 feet to line or property of L. N. Ott; thence north $59\frac{1}{2}$ degrees east $19\frac{5}{10}$ perches to a post; thence north $41\frac{3}{4}$ degrees east $24\frac{2}{10}$ perches to a post; then north 52 degrees east $43\frac{5}{10}$ perches to a maple; thence north $46\frac{3}{4}$ degrees east 21 perches to a post ; thence south $22\frac{1}{2}$ perches east 22 perches to a post ; thence $89\frac{3}{4}$ degrees east $43\frac{2}{10}$ perches to a black oak ; thence south $24\frac{1}{2}$ degrees east 71 perches to a poplar ; thence south 72 degrees west $84\frac{2}{10}$ perches to a hickory, the place of beginning; it being a part of the tract of land mentioned and described in said mortgage, and containing about 50 acres."

The land in suit is on the northwestern part of the town plot, lying between a line near Oak street on the north, the middle of Thirteenth street on the east, the northern line of Queen street on the south, and the Simon and Ott line on the northwest, as these appear on the draft; and as to this land, the only controversy is with respect to the location of Queen street. The dispute on this point seems due to a difference between the scales on which the exterior and the interior lines on the plan were drawn, the former being ten rods, or 165 feet, and the latter about 190 feet to the inch.

Had the streets designated in the release been unmistakably located and marked on the ground, a question different from that now arising would be presented. But at the date of the release, the streets and lots had not been laid out on the ground nor was there anything to indicate street lines except a few furrows made with a plow, and some filling on one street, apparently designed for Queen street, west of Twelfth. The location of this street on the ground was fixed with reference to a stone house on the north; that of King street coincided in part with a public highway known as the Linglestown road, and was adopted in order to utilize this road; and the lines of both were evidently conjectural with respect to the plan. In the main, the marks on the ground were indefinite and obscure. They were not of a character to be recognized as the lines of streets laid down on the plan, or to command precedence of the latter as to courses and distances. The construction of the release, in relation to courses and distances, cannot be affected by the location or grading of streets subsequent to its date. With respect to the Linglestown road as a landmark by which to locate King and Queen streets, it was not placed on the draft by any measurement, but merely indicated, and there is no reference to it in the release as a guide to the location of the streets there described. Hence its relation to the street lines is indefinite. Nor does the release describe the streets with reference to their location, real or conjectural, on the ground. On the contrary, it describes them expressly and solely with reference to their location on the recorded plan, the line on Fourteenth street being described as running northwardly " to the middle of King street, as laid down on said plan," and the line on Thirteenth street as run-

ning northwardly " to the northern line of Queen street, as laid down on said plan." By the measurements of these streets, laid down on the plan, the middle of King street is 510 feet and the northern line of Queen street is 960 feet north of the hickory tree. This, therefore, fixes the distance of the latter line from the place of beginning.

It is true that the northern line of Queen street, as laid down on the plan, extends about 950 feet west of Thirteenth street, and reaches the Ott line near the southwestern extremity of the course running north $59\frac{1}{2}$ degrees east. This being part of the Queen street line as laid down on the plan, the appellant contends that there is no more ground for shifting or curtailing it, in order to make it conform to the measurements on Fourteenth and Thirteenth streets, than for shortening the latter to make them conform to the line thus laid down.

There are, however, obvious reasons for changing the Queen street line instead of the lines and measurements leading to it. Technically, these lines and measurements, being the first described, are to prevail over the Queen street line that follows, unless this is inconsistent with the general design in the premises. Not only is there no inconsistency in this, but the general design obviously requires it. The plain general intent of the recorded plan is to exhibit a symmetrical town plot, with the dimensions of the lots and the width of the streets as there laid down. The termini of the streets are collateral features, clearly immaterial. Since a particular intent must yield to the general intent, the particular intent to place the western terminus of the Queen street line at the point indicated on the plan must give way to the general intent, shown by the dimensions of the lots and the width of the streets as laid down on the plan. The general intent is but slightly affected by placing the northern line of Queen street on the location determined by the lines and measurements on Fourteenth and Thirteenth streets, while a reduction of these lines and measurements, to conform to the Queen street line in its relation to the Ott line, as shown on the draft, would operate seriously against the general intent.

In construing the release, the principle that its language is to be taken most strongly against the releasor has no application. The courses and distances which it gives are those de-

fined and placed on record by the releasee. The language is that of the releasee, adopted by the releasor, and is in effect the language of both. It presents no ambiguity. The release being framed in view of the recorded plan, and with reference to the measurements there laid down, it was the obvious intent that the length of the street lines bounding the portion released should be fixed, as far as practicable, by these measurements. Reading these into the description in the release, the northern line of Queen street is located 960 feet north of the place of beginning, and its terminus at the Ott line is correspondingly changed. This gives effect to the general intent as to the dimensions of lots and width of streets, while sacrificing the particular intent as to the western terminus of the Queen street line. To reverse the courses, and run from the hickory tree on the exterior lines, would not change the result, since the Simon and Ott line must terminate at the northern line of Queen street, wherever the latter may be located.

The conclusion reached by the trial judge is fully sustained by the evidence and by the true construction of the release, and the judgment is affirmed.